1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10   DAVID BRUMMER,                  )     NO. EDCV 09-1756-CT
                                     )
11            Plaintiff,             )     OPINION AND ORDER
                                     )
12        v.                         )
                                     )
13   MICHAEL J. ASTRUE,              )
     Commissioner of                 )
14   Social Security,                )
                                     )
15                                   )
              Defendant.             )
16   _____)

17

18        For the reasons set forth below, it is ordered that judgment be

19   entered in favor of defendant Commissioner of Social Security ("the

20   Commissioner") because the Commissioner's decision is supported by

21   substantial evidence and is free from material legal error.

22                     SUMMARY OF PROCEEDINGS

23        On September 16, 2009, plaintiff, David Brummer ("plaintiff"),

24   filed a complaint seeking judicial review of the denial of benefits by

25   the Commissioner pursuant to the Social Security Act ("the Act").  On

26   January 21, 2010, plaintiff filed a brief with points and authorities in

27   support of remand or reversal.  On February 18, 2010, the Commissioner

28   filed a brief with points and authorities in opposition to plaintiff's

request for remand or reversal.

## SUMMARY OF ADMINISTRATIVE RECORD

1.   Proceedings

On February 14, 2007, plaintiff filed an application for disability insurance benefits, alleging disability since May 2, 2006, due to bi-polar disorder. (TR 142.)[1] The application was denied initially and upon reconsideration. (TR 67-70, 73-77.)

On November 6, 2007, plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). (TR 82.) On January 14, 2009, plaintiff, represented by an attorney, appeared and testified before an ALJ. (TR 22-35.) The ALJ also considered vocational expert ("VE") (TR 35-48) and medical expert ("ME") (TR 61-64) testimony, and the testimony of plaintiff's wife, C.B.[2] (TR 48-61).

On April 16, 2009, the ALJ issued a decision that plaintiff was not disabled, as defined by the Act, because he remains able to perform a full range of medium-level work, and that he thus was not eligible for benefits.   (TR 10-18.)

On May 1, 2009, plaintiff filed a request with the Social Security Appeals Council to review the ALJ's decision.   (TR 6.)   Additional evidence was received and made part of the administrative record.   (TR 4, 347-69.)   On July 24, 2009, the request was denied.   (TR 1-3.) Accordingly, the ALJ's decision stands as the final decision of the Commissioner.   Plaintiff subsequently sought judicial review in this

---

[1]   "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

[2]   This court refers to lay witnesses by first and last initial.

2

1 | court.

2 |     2.   <u>Summary Of The Evidence</u>

3 |   The ALJ's decision is attached as an exhibit to this opinion and

4 | order and materially summarizes the evidence in the case.

5 | <u>PLAINTIFF'S CONTENTIONS</u>

6 |   Plaintiff essentially contends the ALJ failed to properly:

7 | 1.   Consider lay witness statements by plaintiff's wife;

8 | 2.   Develop the record;

9 | 3.   Consider the treating physician's opinion; and,

10 | 4.   Consider plaintiff's credibility.

11 | <u>STANDARD OF REVIEW</u>

12 |   Under 42 U.S.C. §405(g), this court reviews the Commissioner's

13 | decision to determine if: (1) the Commissioner's findings are supported

14 | by substantial evidence; and, (2) the Commissioner used proper legal

15 | standards. <u>Macri v. Chater</u>, 93 F.3d 540, 543 (9th Cir. 1996).

16 | Substantial evidence means "more than a mere scintilla," <u>Richardson v.</u>

17 | <u>Perales</u>, 402 U.S. 389, 401 (1971), but less than a preponderance.

18 | <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997).

19 |   When the evidence can reasonably support either affirming or

20 | reversing the Commissioner's conclusion, however, the Court may not

21 | substitute its judgment for that of the Commissioner. <u>Flaten v.</u>

22 | <u>Secretary of Health and Human Services</u>, 44 F.3d 1453, 1457 (9th Cir.

23 | 1995). The court has the authority to affirm, modify, or reverse the

24 | Commissioner's decision "with or without remanding the cause for

25 | rehearing." 42 U.S.C. §405(g).

26 | ////

27 | ////

28 |

3

DISCUSSION

1.   The Sequential Evaluation

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled.  First, it is determined whether the person is engaged in "substantial gainful activity."  If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments.   If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work.   If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work.   The person is entitled to benefits only if the

4

1  person is unable to perform other work.  20 C.F.R. § 404.1520; Bowen v.

2  Yuckert, 482 U.S. 137, 140-42 (1987).

3      2.   Issues

4          A.   Wife's Testimony (Issue # 1)

5      Plaintiff first contends the ALJ "ignored" the testimony and third-

6  party function reports submitted by plaintiff's wife and, specifically,

7  her conclusion that plaintiff is unable to maintain full-time work

8  because of depression and pain. The record belies this contention.

9      The ALJ specifically noted that C.B. reported plaintiff is able to

10 perform approximately the same activities that plaintiff himself

11 described.  (See TR 13, 16, 149-61, 162-69, 192-93.)  He concluded that

12 the daily activities she described were not limited to the extent one

13 would expect given plaintiff's and C.B.'s assertion of disabling

14 symptoms and limitations and, moreover, were not inconsistent with the

15 performance of many basic work activities.  (TR 16.)

16     This finding is supported by substantial evidence of record. For

17 example, C.B. reported that plaintiff can take care of his personal

18 care, prepare his own meals, use the computer, pay bills. (TR 162-63.)

19 She testified that he takes himself to doctor's appointments. (TR 53.)

20 Indeed, she testified that plaintiff does research and plays solitaire

21 on the computer in order "to keep his mind sharp." (TR 50.)

22     The fact that C.B. testified and reported that plaintiff engages

23 in activities of a type that suggest he is able to work is a germane

24 reason for the ALJ to decline to credit C.B.'s and plaintiff's

25 contention that he is unable to do so.  See Tommasetti v. Astrue, 533

26 F.3d 1035, 1040(9th Cir. 2008) (holding that ALJ properly inferred that

27 plaintiff was not as physically limited as claimed based on his ability

28                                    5

1  to  travel  to  Venezuela  for  an  extended  time  to  care  for  an  ailing

2  sister).

3       There is no material legal error here.

4            B.   Development of the record re: treating physician opinion

5                 (Issues # 2 and # 3)

6       Plaintiff  next  contends  the  ALJ  should  have  requested  that  a

7  qualified medical expert interpret plaintiff's results on several self-

8  assessment  forms  apparently  administered  by  plaintiff's  treating

9  psychologist,  because  the  reports  might  support  the  psychologist's

10  assessment  of  plaintiff's  abilities.   Relatedly,  plaintiff  claims  the

11  ALJ  did  not  give  sufficient  weight  to  his  treating  psychologists'

12  opinions. These contentions are unavailing.

13      It  is  the  province  of  the  ALJ  to  evaluate  the  medical  record.

14  Thomas v. Barnhart,  278  F.2d  947,  957-58  (9th  Cir.  2002)  (citation

15  omitted). The  weight  the  ALJ  affords  to  any  one  physician's  opinion

16  turns  on  the  evaluation  of  a  number  of  factors,  including  the  length  and

17  nature  of  the  treating  relationship,  the  specialty  of  the  physician,  the

18  consistency  of  the  opinion  with  other  evidence  in  the  record  and  whether

19  the  physician  has  "present[ed]  relevant  evidence  to  support  an  opinion,

20  particularly  medical  signs  and  laboratory  findings."  20  C.F.R.  §

21  404.1527 (d).

22      When  there  is  a  conflict  in  the  medical  record,  the  ALJ  must

23  resolve  it,  and  may,  accordingly,  determine  that  a  particular  treating

24  physician's  opinion  is  entitled  to  little  or  no  weight,  so  long  as  the

25  ALJ makes a record of the "specific and legitimate reasons" that support

26  the  evaluation  and  sets  out  "a  detailed  and  thorough  summary  of  the

27  facts  and  conflicting  clinical  evidence,  stating  []  interpretations

28

thereof, and making findings." <u>Thomas</u>, 278 F.3d at 957.

"Specific and legitimate reasons" include, for example, that the opinion is conclusory, brief, and does not cite objective medical findings that support its conclusions. <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004).

The ALJ amply met these standards here. After discussing plaintiff's medical history in detail, the ALJ concluded that the treating psychologist's assessment of plaintiff's ability to work was not entitled to weight because it: (1) conflicted with the opinions of the consultative examining psychiatrist (TR 248-51), the state agency reviewing psychiatrist (TR 252-63), and the testifying medical expert (TR 61-64), all of whom opined plaintiff remains able to work; (2) was issued on a fill-in-the-blank form without any reference to or discussion of the objective observations or medical tests that would support his conclusions (TR 321-22); (3) conflicted with substantial objective evidence of record, including plaintiff's own statements, documenting less severe limitations than the doctor opined (<u>e.g.</u>, TR 149-61, 162-62, 192-93). (TR 16.)

These findings are based on substantial evidence of record and are legally sufficient reasons to decline to give weight to the treating psychologist's opinion. <u>See</u>, <u>e.g.</u>, <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d at 1195.

Plaintiff contends, however, that the ALJ erred nonetheless because, in fact, the record includes copies of several written self-assessment forms completed by plaintiff, apparently at the behest of his treating psychologist. (<u>See</u> TR 293-301.) Plaintiff argues that the ALJ should have further developed the record to ascertain whether these

tests supported the psychologists' opinion. The ALJ has a duty to develop the record, however, only when the evidence is ambiguous or inadequate to support a determination. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ did not have a duty to re-contact plaintiff's treating physicians where the ALJ found, with support in the record, that the evidence was adequate to make a disability determination). Neither was the case here.

The ALJ found that the treating psychologist's opinion was not entitled to weight because it was unsupported and contradicted by substantial other evidence of record, not because it was ambiguous or inadequate. (See TR 16.) Moreover, as was testified to by the ME, a board licensed psychiatrist, the "tests" included in the record are self-assessments; they are not the physician's own objective observations, nor are they objective medical tests. (See TR 43.) When the record supports the ALJ in discounting a plaintiff's credibility, as it does in this case, as discussed below, the ALJ is entitled to give no weight to a physician's opinion that is premised on the plaintiff's subjective complaints. Tonapetyan v. Halter, 242 F.3d at 1149.

Accordingly, because the ALJ applied proper legal standards in finding that the treating psychologist's opinion was unsupported, he did not err in failing to develop further with regard to that opinion. See Bayliss v. Barnhart, 427 F.3d at 1217. There is no material legal error here.

### C.   Plaintiff's Credibility (Issue # 4)

Last, plaintiff contends the ALJ failed to articulate legally sufficient reasons to decline to credit plaintiff's subjective statements. The record belies this contention.

8

In conducting an evaluation of plaintiff's credibility, the ALJ must make findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [plaintiff's] testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).   Absent affirmative evidence of malingering, an adverse credibility finding must be based on "clear and convincing reasons."   Carmickle v. Comm'r of Social Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008).  Although the ALJ's interpretation of plaintiff's testimony may not be the only reasonable one, if it is supported by substantial evidence "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citation omitted).

In assessing a plaintiff's credibility, the ALJ may use "ordinary techniques" of credibility evaluation. Tonapetyan v. Halter, 242 F.3d 11244, 1147-48 (9th Cir. 2001). Accordingly, inconsistencies in a plaintiff's testimony or on other relevant character evidence may weigh into the evaluation. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991).

Here, to the extent the ALJ declined to credit plaintiff's statements that his impairments are debilitating, the ALJ articulated multiple clear and convincing reasons, supported by substantial evidence of record, for so doing.

First, the ALJ noted that plaintiff's statements were contradictory. He contends he has difficulty concentrating, for example, yet went into extreme detail in filling out his forms for his application and, moreover, engages in activities, like conducting internet research and playing solitaire on his computer, that are

indicative of an ability to maintain an acceptable level of concentration to perform work and that take considerable mental functioning ability. (TR 14-15, 141-48, 149-61.) The ALJ was entitled to infer from these contradictions that plaintiff's statements were not entirely credible. See, e.g., Tommasetti v. Astrue, 533 F.3d 1040 (ALJ properly inferred plaintiff was not as physically limited as claimed based on his ability to travel to Venezuela for an extended time to care for an ailing sister).

Second, plaintiff claimed he had not worked since May 2, 2006, due to pain and mental capacity. (TR 142.) However, the ALJ pointed out that, in fact, plaintiff left his job not because of his disability but because the company worked for closed its doors and plaintiff was unable to find another job. (TR 27.) Indeed, the ALJ pointed out that plaintiff has continued to look for work since his alleged onset date and took work as a notary public on a part-time, contract basis when the work was available. (E.g., TR 15, 63, 230.) These are legally sufficient reasons for the ALJ to infer plaintiff was not credible regarding his ability to work. See, e.g., Bayliss v. Barnhart, 427 F.3d at 1216 (holding that ALJ properly discounted opinion of physician regarding plaintiff's mental limitations because the limitations were long-standing and did not prevent plaintiff from completing high school and college, finishing a Certified Nurse's Aide training program, and participating in military training).

Third, plaintiff's complaints are not fully substantiated by the objective medical conclusions, leading the ALJ to conclude that his symptoms are not as limiting as plaintiff contends. (TR 15-16.) As an example, plaintiff contends he is unable to focus or follow

instructions, yet in 2007 the consultative examining found no evidence of cognitive deficits, perceptual disturbances, or delusional disorders, and that plaintiff remains able to remember and complete both simple and complex tasks. (TR 248-51.) A conflict with the medical evidence is "a relevant factor" in determining a plaintiff's credibility. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

Fourth, plaintiff has not received the level of care that one would expect were his symptoms as disabling as he contends. (TR 15.) The ALJ found, the record does not indicate plaintiff has been hospitalized for his impairment, or that he has received significant active care. He receives only conservative, routine maintenance. There have been no significant increase or change in his prescribed medication that would reflect his condition is not controlled. Nor does plaintiff report side effects from his medications that would prevent him from working. (See TR 15.) An independent review of the record shows that these findings are well-supported. And evidence of conservative medical treatment is a legally sufficient reason to discount a plaintiff's testimony regarding the severity of an impairment. Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007)(citation omitted. See also Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008)(ALJ made permissible inference that plaintiff's pain was not all-disabling given that plaintiff did not seek aggressive treatment program and responded favorably to conservative treatment).

Fifth, plaintiff, his wife, and his examining physicians have described daily activities that are not as limited to the extent one would expect given the complaints of disabling symptoms and limitations.

11

1  (See, e.g., TR 149-61, 162-63, 192-93.)  The ALJ is entitled to conclude

2  that a plaintiff's statements regarding the extent of his disability are

3  not credible when he reports daily activities indicative of the ability

4  to do work-like activities.  See, e.g., Stubbs-Danielson v. Astrue, 539

5  F.3d at 1175 (ALJ properly rejected plaintiff's statements to the effect

6  of total disability when the record reflected she engaged in "normal

7  activities of daily living, including cooking, house cleaning, doing

8  laundry, and helping her husband in managing finances"); Morgan v.

9  Comm'r of Social Sec. Admin, 169 F.3d at 600 (ALJ's credibility

10  determination affirmed when ALJ determined that plaintiff's ability to

11  fix meals, do laundry, work in the yard, and occasionally care for his

12  friend's child served as evidence of his ability to work). While "one

13  does not need to be 'utterly incapacitated' in order to be disabled,"

14  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001), it is the

15  province of the ALJ to weigh credibility, and when the evidence, as

16  here, is susceptible of more than one rational interpretation, it is the

17  Commissioner's conclusion which must be upheld.  Key v. Heckler, 754

18  F.2d 1545, 1549 (9th Cir. 1985).

19      Accordingly, there is no material legal error here.

## CONCLUSION

21      The court is not unsympathetic to the fact that it may be difficult

22  to find work in today's economy.  After careful consideration of the

23  record as a whole, however, the magistrate judge concludes that the

24  Commissioner's decision is supported by substantial evidence and is free

25  ////

26  ////

27  ////

28                                    12

1  from material legal error.   Accordingly, it is ordered that judgment be

2  entered in favor of the Commissioner.

3

4  DATED: *March 9, 2010*

5

CAROLYN TURCHIN
6  UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13

**SOCIAL SECURITY ADMINISTRATION**
**Office of Disability Adjudication and Review**

**DECISION**

<table>
<tr><td><u>IN THE CASE OF</u></td><td><u>CLAIM FOR</u></td></tr>
</table>

Period of Disability and Disability Insurance
Benefits

David P Brummer
(Claimant)

(Wage Earner)                                    (Social Security Number)

## JURISDICTION AND PROCEDURAL HISTORY

On February 14, 2007, the claimant filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning May 2, 2006. The claim was denied initially on August 3, 2007, and upon reconsideration on October 29, 2007. Thereafter, the claimant filed a written request for hearing on November 23, 2007 (20 CFR 404.929 *et seq.*). The claimant appeared and testified at a hearing held on January 14, 2009, in San Bernardino, CA. Also appearing and testifying were Miriam Sherman, an impartial medical expert and Sandra M Fioretti, an impartial vocational expert. The claimant is represented by Daniel Keenan, an attorney.

## ISSUES

The issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

There is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2011. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act from May 2, 2006 through the date of this decision.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is

See Next Page

**10**

**EXHIBIT**

David P Brummer                                     Page 2 of 9

disabled (20 CFR 404.1520(a)).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b)).  Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a)).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b)).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574 and 404.1575).  If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience.  If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p).  If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled.  If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).  If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is disabled.  If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e)).  An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f)).  The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long

**11**

See Next Page



enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b) and 404.1565). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g) and 404.1560(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.**

**2.   The claimant has not engaged in substantial gainful activity since May 2, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*).**

The claimant worked after the alleged disability onset date but this work activity did not rise to the level of substantial gainful activity. The claimant testified that he worked as a notary public for real estate transactions and was paid $125.00 for each signing of the loan documents on an occasional basis.

**3.   The claimant has the following severe impairment: mood disorder (20 CFR 404.1520(c)).**

Progress notes reported on June 3, 2005, that the claimant had a mood disorder not otherwise specified and a Global Assessment of Functioning ("GAF") of 80 indicating that if symptoms were present, they were transient and expectable reactions to psychosocial stressors; no more than a slight impairment in social, occupational, or school functioning. (Exhibit 2F page 5).

At the request of the California Department of Social Services, the claimant was seen by Jason H. Yang, M.D., for a clinical psychiatric consultive examination. Dr. Yang reported on July 8, 2007, that the claimant complained of depressive, anxious symptoms for over ten years and trouble with sleeping and concentration. He last worked as a mortgage loan officer in November, 2006. After examination, the claimant was diagnosed with depressive disorder not otherwise

**12**



David P Brummer                                    Page 4 of 9

specified and a GAF of 65 indicating some mild symptoms or some difficulty in social, occupational, or school functioning. (Exhibit 3F).

Gilbert Putnoky, M.D., reported on December 3, 2008, that the claimant was seen for a rheumatology consultive examination. He had been diagnosed with bipolar disorder and complained of problems with anxiety, depression, fatigue and myalgias. He had sleep apnea for which he used a CPAP machine. On examination, the claimant was found to have essentially all the fibromyalgia points. The claimant was diagnosed with fibromyalgia syndrome and chronic psychiatric difficulties. (Exhibit 14F).

The undersigned took into consideration all the claimant's other diagnosed conditions, including fibromyalgia, and finds that there is minimal clinical evidence to corroborate or support any finding of significant vocational impact related them.

**4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).**

The claimant's mental impairment does not meet or medically equal the criteria of listing 12.04. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied.  To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.  A marked limitation means more than moderate but less than extreme.  Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has no restriction. The claimant reported in his adult function reports on May 17, 2007, and September 6, 2007, that he is able to take care of pet dogs, watch television, cook meals, take care of his personal care, do laundry, clean, vacuum, drive a car, go shopping in stores, use a computer, go grocery shopping, pay bills, count change, use a checkbook, and handle a savings account. (Exhibit 4E and 9E).  Carolyn Brummer, the claimant's wife, reported in a third party adult function report on May 14, 2007, that the claimant is able to perform approximately the same activities that the claimant described. (Exhibit 5E). Dr. Yang reported on July 8, 2007, that the claimant is able to do household chores, run errands, go shopping, cook, play with his two dogs, water the garden and use a computer. He is able to manage money, go places alone, and watch television.  (Exhibit 3F page 2).

In social functioning, the claimant has no difficulties. The claimant reported that he lived with his wife and goes to the store, post office, library, church and gas station. (Exhibit 4E and 9E). Dr. Yang reported on July 8, 2007, that the claimant stated that he had a good relationship with his family and a fine relationship with his friends. He lived with his wife. (Exhibit 3F page 2).

With regard to concentration, persistence or pace, the claimant has mild difficulties.  His cognitive ability and memory are intact and the medical reports indicate that he functions at a

**13**

See Next Page



David P Brummer▓▓▓▓▓▓▓                                    Page 5 of 9

higher level that would allow him to do basic work activity. The undersigned notes that the claimant went into extreme detail answering his adult function report and disability report. This is indicative of an ability to maintain an acceptable level of concentration to perform at least complex tasks.

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, each of extended duration.

Because the claimant's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. There are no extended episodes of decompensation and the claimant is not expected to decompensate with an increase in mental demands. Moreover, he does not need to live in a highly structured living arrangement.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c).**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent

**14**

See Next Page



David P Brummer ████████                                    Page 6 of 9

to which they limit the claimant's ability to do basic work activities.  For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

At the hearing, the claimant testified that he had not worked since May 2, 2006, due to pain and mental capacity. He complained of difficulty concentrating, depression, mood swings, high and low energy levels, anxiety, and loss of interest. The company he worked for closed its doors and he tried to apply for jobs and sent out resumes, but did not get hired. He got out of the grocery business in 2000 because he could not work the stressful job and work hours. He then went into the banking business. He was currently looking for work, but they were all forty hour per week jobs and he did not think he could maintain that work schedule.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

In terms of the claimant's alleged disabling impairments, the record fails to document any objective clinical findings establishing that the claimant was not able to perform work in light of the reports of the treating and examining practitioners and the findings made on examination.

Dr. Yang reported on July 8, 2007, that the claimant stated that his treatment had been helping him. The claimant was well groomed and made good eye contact. His recent, remote and remote past memories were intact. He stated that he felt "Okay" and his affect was full range and appropriate to mood. There was no evidence of cognitive deficits, perceptual disturbances, or delusional disorders. He was able to focus attention adequately and follow instructions. (Exhibit 3F pages 2-4). Dr. Putnoky reported on December 3, 2008, that the claimant was self employed doing notary work. He was alert and oriented and reported that he tried to exercise by walking. He was able to get on and off the examination table without any difficulties. His joint examination was completely normal. (Exhibit 14F pages 2-3). These findings are indicative that the claimant's complaints are not fully substantiated by the objective medical conclusions and his symptoms may not have been as limiting as the claimant has alleged in connection with this application.

The record fails to document that the claimant has been hospitalized for his impairment or show that the claimant has received significant active care other than for conservative routine maintenance. The claimant became unemployed when his business failed and not as a result of disabling mental health symptoms. The claimant spends his days on the internet and playing computer games such as solitaire, which requires considerable mental functional ability including concentration. He is still a licensed notary public and continues to work in the field. This also takes considerable mental functioning ability. He continues to look for work and appears to have done so on a continuous basis since his alleged onset date. There have been no significant increase or changes in prescribed medication reflective of an uncontrolled condition, nor did the claimant describe side affects from his medication that would prevent him from

**15**

See Next Page



David P Brummer <span style="background:black">▆▆▆▆▆</span>                                    Page 7 of 9

substantial gainful activity. Furthermore, no treating or examining source determined that the claimant's impairments were totally debilitating or rendered the claimant completely unemployable.

The undersigned has taken into consideration the nature, location, onset, duration, frequency, radiation, and intensity of the claimant's pain, as well as precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side-effects of any pain medication; other treatment, other than medication, for relief of pain; functional restrictions; and the claimant's daily activities, and finds that his allegations of disabling pain are out of proportion with the record.

The claimant has admitted certain abilities which provide support for part of the residual functional capacity conclusion in this decision. As noted above, the claimant, his wife, and his examining physicians have described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The overall evidence suggests that the claimant has the ability to care for himself and maintain his home. Furthermore, the performance of the claimant's daily activities as described is not inconsistent with the performance of many basic work activities.

As for the opinion evidence, a *Work Capacity Evaluation (Mental)* dated November 19, 2008, by John Kohut, M.D., reported that the claimant had extreme limitations in his ability to main maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual with customary tolerances; interact appropriately with the general public; and had marked limitations in all other areas of mental functioning. (Exhibit 13F). A treating physician's medical opinion, on the issue of the nature and severity of an impairment, is entitled to special significance; and, when supported by objective medical evidence and consistent with otherwise substantial evidence of record, entitled to controlling weight (Social Security Ruling 96-2p). However, the opinion of this doctor appears on a fill-in-the-blank form, with only marginal notes attached to it. The doctor failed to cite any medical testing results or objective observations to support his conclusions as to the claimant's residual functional capacity. Furthermore, the opinion of this doctor, who assessed the claimant extreme and marked mental limitations is not afforded any significant weight as this opinion conflicts with the substantial evidence of record, documenting less severe limitations. (Social Security Ruling 96-6p). The doctor did not adequately consider the entire record, including the statements of collateral sources and the objective findings of other treating physicians. The objective evidence in the record does not support the level of severity that this doctor assigns.

Dr. Yang reported on July 8, 2007, that the claimant can adequately remember and complete simple and complex tasks; tolerate the stress inherent in the work environment; maintain regular attendance; work without supervision; and interact appropriately with supervisors, coworkers, and the public in the workplace. (Exhibit 3F page 4). Pursuant to 20 CFR § 404.1527 and Social Security Ruling 96-2p, the undersigned assigns significant weight to this opinion, as it is well-supported by the medical evidence, including the claimant's medical history and clinical and objective signs and findings as well as detailed treatment notes, which provides a reasonable basis for claimant's chronic symptoms and resulting limitations. Moreover, the opinion is not inconsistent with other substantial evidence of record. In addition, the physician is an examining source who is familiar with Social Security Rules and Regulations and legal standards set forth

**16**



David P Brummer                                     Page 8 of 9

therein and best able to provide a superior analysis of the claimant's impairments and resulting limitations.

A *Psychiatric Review Technique* dated July 27, 2007, by N.S. Haroun, M.D., a State psychiatric consultant, found that the objective medical evidence supported a finding that the claimant had medically determinable depressive disorder that was not severe. The claimant was found to have no restrictions of daily living, no difficulties maintaining social functioning and have mild difficulties in maintaining concentration, persistence or pace, and have no episodes of decompensation. The claimant was not found to have a history of chronic organic mental disorder. (Exhibit 4F). The undersigned has assigned significant weight to the State psychiatric consultant's opinion with regard to the claimant's lack of severe mental impairment pursuant to 20 CFR § 404.1527 and SSR 96-6p because it was based upon a thorough review of the evidence and familiarity with Social Security Rules and Regulations and legal standards set forth therein. It is well-supported by the medical evidence, including the claimant's medical history and clinical and objective signs and findings as well as detailed treatment notes, which provides a reasonable basis for claimant's chronic symptoms and resulting limitations. Moreover, this opinion is not inconsistent with other substantial evidence of record. However, for the purposes of this decision, the claimant is to be given the benefit of the doubt and found to have a severe mental impairment.

The Medical Expert, Miriam Sherman, M.D., Board Certified in adult and child psychiatry testified that she had reviewed the entire medical file as outlined above. She gave a detailed and longitudinal summary of the claimant's medical history noting that the claimant's mental health symptoms are stable and he has shown improvement with treatment. Based on these records, it was her expert medical opinion that the claimant had mild restrictions of activities of daily living, mild difficulties maintaining social functioning, mild difficulties maintaining concentration, persistence, or pace, and no episodes of decompensation. Dr. Sherman based her opinion on exhibits. The undersigned concurs with the Medical Expert's opinion and so finds.

**6.   The claimant is capable of performing past relevant work as a notary public, store manager, financial executive planner, financial analyst, and mortgage officer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).**

The Vocational Expert found that the exertional and non-exertional requirements of these jobs are consistently within the claimant's residual functional capacity as determined in this decision, and therefore the claimant retains the capacity to perform "past relevant work." (Social Security Rulings 82-61 and 82-62). The vocational expert stated that his testimony was consistent with the United States Department of Labor *Dictionary of Occupational Titles* and in accordance our procedures under Social Security Ruling 00-4p.

In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed.

**17**

See Next Page



David P Brummer (                                    Page 9 of 9

7.    **The claimant has not been under a disability, as defined in the Social Security Act, from May 2, 2006 through the date of this decision (20 CFR 404.1520(f)).**

## DECISION

Based on the application for a period of disability and disability insurance benefits filed on February 14, 2007, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

/s/ *Joseph D Schloss*
_____
Joseph D Schloss
Administrative Law Judge

April 16, 2009
_____
Date

**18**

EXHIBIT